FIRST NATIONAL BANK OF DURANT, OKLAHOMA, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6913.   Promulgated March 16, 1927.

Upon the evidence, deductions of a loss sustained in 1919
allowed; deductions of alleged bad debts in 1920 disallowed.

*Hubert L. Bolen, Esq.,* for the petitioner.
*B. H. Saunders, Esq.,* for the respondent.

This proceeding is to redetermine deficiencies in income and excess-profits taxes for the years 1919 and 1920, amounting to $2,893.88. The deficiencies arise from the disallowance by the Commissioner of deductions for alleged bad debts, in 1919 of $5,195.62, and in 1920 of $6,200.

### FINDINGS OF FACT.

The petitioner is a banking corporation, organized under the Federal Banking Act, with its place of business at Durant, Okla.

Prior to 1919, and during 1919, 1920, and 1921, petitioner extended credit to Sam I. Hynds & Co., cotton brokers. It loaned money to them for cotton purchases, secured by negotiable bills of acceptance with the cotton as collateral security.

On April 30, 1919, Sam I. Hynds & Co. was indebted to the petitioner in a sum in excess of $12,000, secured as follows:

96 bales of cotton.
$1,000 par value capital stock of the Oklahoma Cotton Cleaner Co.
$1,350 par value capital stock of the Choctaw Chief Lead & Zinc
  Mining Co.
$1,000 par value capital stock of the Smith Lee Oil & Gas Co.

On April 30, 1919, at a called meeting of the board of directors of the petitioner, a resolution was passed, reading in part as follows:

In going over the cotton account it was deemed wise to charge the profit account with $5,195.62 and credit it on the Hynds Cotton account, reducing this account well within the limits of safety and security.

In accordance with the above resolution, and under the same date, the sum of $5,195.62 was charged off the books as a loss, credited to the said Hynds account, and claimed as a deduction from gross income on the petitioner's return for the year 1919. This deduction has been disallowed by the Commissioner in his deficiency letter dated July 20, 1925.

A part of the amount owing by Hynds & Co. on April 29, 1919, consisted of balances on bills of acceptance remaining unpaid after crediting the amounts realized from the sale of collateral, as above described. There was no security for these balances. The partners at that time had no property out of which the indebtedness could be paid. The petitioner wished to obtain the best settlement of the

79705°—28——35

account it could get. Accordingly, on the date named, petitioner entered into an agreement with Sam I. Hynds under which it received promissory notes to the amount of $17,500, of which $5,500 was a secured obligation of a third party, to be applied against the indebtedness, and it released Hynds & Co. from payment of a balance of $5,195.62. The latter amount was then charged off as a bad debt. The agreement is set out in full below:

The First National Bank of Durant, Oklahoma, and Sam I. Hynds hereby contract as follows:

(1) The said Hynds has this day caused to be executed and delivered to said bank a note signed by Dora N. Hynds for $14,500.00 and secured by a first mortgage on certain real estate in Durant, Oklahoma, fully described in said mortgage, said note being due on or before three years from this date and bearing 7 per cent interest, payable annually; the proceeds of said note to be used in extinguishing a present indebtedness of the said Dora N. Hynds of $9,000.00 and interest and the difference is credited on the Sam I. Hynds cotton account.

The said Sam I. Hynds has also this day made, executed and delivered to said bank his note in the sum of $12,000.00 due November 1st, 1919, bearing interest at the rate of 6 per cent per annum. The said Sam I. Hynds in addition owes the First National Bank of Durant, Oklahoma, the sum of $7,150.00 represented by open account shown on the books of said bank under the head of Sam I. Hynds Cotton Account bills of acceptance in the sum of $7,150.00, with interest to be charged against said account at the rate of 8 per cent per annum, which said account is secured by an equity in 18 bales of cotton belonging to the said Hynds, now in charge of Lehman-Stearns Company at New Orleans, La., also 78 bales of cotton represented by tickets in said bank and $1,000.00 stock at par value in the Oklahoma Cotton Cleaner Company and $1,350.00 stock at par value in the Choctaw Chief Lead & Zinc Mining Company and $1,000.00 stock at par value in the Smith-Lee Oil & Gas Company, making the total indebtedness of the said Sam I. Hynds to said bank, exclusive of the mortgage and note of Dora N. Hynds in the sum of $19,150.00.

(2) It is further agreed that all assignments, notes, bills of exchange and other evidences of indebtedness held by said bank against the said Sam I. Hynds or the Sam I. Hynds Cotton Company, be and the same are hereby cancelled, annulled, set aside and held for naught.

(3) The said Bank on its part agrees that during the cotton season of the year 1919–1920, that it will extend a line of credit to the said Sam I. Hynds of $100,000.00 and more if in its judgment conditions so justify. The said Sam I. Hynds on his part agrees to secure said line of credit with cotton which he shall purchase with said money and that the cotton tickets representing the cotton so purchased shall be left with said bank, secured by negotiable bills of acceptances so that the line of credit of the said Sam I. Hynds shall be in negotiable and commercial form.

The said Sam I. Hynds further agrees that he will manage said cotton, purchase and sell the same in a good business-like manner and that he will not speculate on said sum of money or in any way use the same except in the legitimate purchase of spot cotton.

The notes given by Sam I. Hynds and Dora N. Hynds were paid in 1919.

On December 31, 1920, Sam I. Hynds & Co. was indebted to the petitioner in a sum in excess of $30,000, secured by certain cotton

warehouse receipts and $3,350 par value capital stock, as set forth above.

On December 31, 1920, a regular meeting of the petitioner's board of directors was held, and the following is an extract from the minutes of the said directors' meeting:

The cotton accounts were gone over in detail and regarded as in good shape and well secured and liquidation proceeding in a satisfactory manner with the exception of the Hynds account.

It was the feeling that this account contained a loss and in order to put it in a more equitable condition the officers were instructed to take Sam I. Hynds & Company's note for $6,200.00 and credit it out to the cotton account and charge the note off and carry it at a loss.

In accordance with the above resolution, the sum of $6,200 was charged off the books as a loss, credited to the said Hynds account, and claimed as a deduction from gross income on the petitioner's return for the year 1920. This deduction has been disallowed by the Commissioner in a deficiency letter dated July 20, 1925.

Sam I. Hynds & Co. was a partnership composed of Sam I. Hynds, Henry Hynds, William Hynds, and others.

The loans were carried on petitioner's books in a " memorandum acceptance account " with Hynds & Co., and each bill of acceptance was treated as a separate transaction. When the cotton securing a given bill of acceptance was sold, the proceeds would be credited in the account against the amount due on that bill. If there was a surplus above the amount due on the bill, the surplus would be credited to the deposit account of Hynds & Co. and be subject to their order by check. If the proceeds were less than the amount due on the bill, the deficit would be left as a debit in the acceptance account until the entire account was closed out.

After the settlement of April 29, 1919, the petitioner extended credit to Hynds & Co. during the cotton season of 1919–1920, pursuant to the above agreement.

On December 31, 1920, Hynds & Co. owed petitioner upwards of $30,000, of which $6,200 was charged off in the circumstances set forth above. The latter amount was made up of the unpaid balances of amounts due on acceptances after crediting the proceeds from the collateral, respectively. The petitioner continued to extend credit to Hynds & Co. throughout 1921.

During 1919, 1920, and 1921, the price of cotton fluctuated widely between 20 cents and 40 cents a pound. At one time in 1921 it was down to 10 cents.

### OPINION.

LOVE: We are satisfied from the evidence that the amount of $5,195.62 was ascertained and known by petitioner on April 30, 1919, to be worthless. On that date Hynds & Co. owed petitioner an

amount in excess of $12,000. The agreement set forth in the findings of fact shows that a large part of this indebtedness was unsecured. The officers of the petitioner were well acquainted with the financial ability of the members of Hynds & Co. and their knowledge convinced them that at least a part of the unsecured debts could not be collected. They then made an agreement under which petitioner received security, put up by a third party, for $5,500 of debts previously unsecured, canceled unsecured obligations totaling $5,195.62, and agreed to extend further credit. In some circumstances, the extension of further credit would be evidence that the debtor had financial worth, and hence it would be an evidentiary fact to be considered in deciding the worthlessness of a prior debt. We think, however, the evidence shows that on April 29, 1919, the debtors had no financial worth and that the agreement then made was an attempt by petitioner to retrieve as much as possible of the indebtedness then existing. The agreement provided that the loans to be made thereafter were to be secured. The amount canceled was a loss and not a bad debt. It was not a debt after being canceled. As a loss it was deductible for the year 1919.

The evidence relating to the amount charged off in 1920 is less convincing. The board of directors of the petitioner passed a resolution expressing their feeling that the account with Hynds & Co. contained a loss and the officers were instructed to charge off $6,200. This action alone, however, can not be taken as establishing the worthlessness of the debts making up this amount, however desirable the charge-off might have been for the purpose of petitioner's financial statements. Bank directors often find it conducive to the reputation of the bank to charge off debts which are past due. The worthlessness should be shown by more convincing evidence than the order by the board of directors to charge it off. It is not shown how much cotton petitioner held as security or what its value was at the date of the charge-off. If the value of the cotton exceeded the amounts due on the particular bills of acceptance with which it was pledged, we apprehend the petitioner could have reached the surplus to satisfy the unsecured debts. The unsecured debts had resulted from deficits in the amounts realized from time to time from the sale of the security on particular bills of acceptance. The petitioner voluntarily permitted the surplus on other bills of acceptance to be withdrawn by the debtors while it still held their unsecured and overdue obligations. The petitioner's persistence in this practice indicates to our minds a faith in the financial prospects of the debtors. The petitioner did not suddenly discover on December 31, 1920, that such faith was misplaced, for it continued to extend credit to the debtors throughout the following year in the same manner that it had been doing in 1920. The evidence does not sustain petitioner's contention that these debts were worthless on December 31, 1920.

The record does not disclose how much of the deficiency is for 1919 and how much for 1920. It is therefore necessary that the judgment for 1920 be entered under Rule 50.

> *Judgment will be entered for petitioner as to the year 1919, and for the respondent as to the year 1920, on 15 days' notice, under Rule 50.*