*547 OPINION.
Love:
We are satisfied from the evidence that the amount of $5,195.62 was ascertained and known by petitioner on April 30, 1919, to be worthless. On that date Hynds & Co. owed petitioner an *548 amount; in excess of $12,000. The agreement set forth in the findings of fact shows that a large part of this indebtedness was unsecured. The officers of the petitioner were well acquainted with the financial ability of the members of Hynds & Co. and their knowledge convinced them that at least a part of the unsecured debts could not be collected. They then made an agreement under which petitioner received security, put up by a third party, for $5,500 of debts previously unsecured, canceled unsecured obligations totaling $5,195.62, and agreed to extend further credit. In some circumstances, the extension of further credit would be evidence that the debtor had financial worth, and hence it would be an evidentiary fact to be considered in deciding the worthlessness of a prior debt. We think, however, the evidence shows that on April 29, 1919, the debtors had no financial worth and that the agreement then made was an attempt by petitioner to retrieve as much as possible of the indebtedness then existing. The agreement provided that the loans to be made thereafter were to be secured. The amount canceled was a loss and not a bad debt. It was not a debt after being canceled. As a loss it was deductible for the year 1919.
The evidence relating to the amount charged off in 1920 is less convincing. The board of directors of the petitioner passed a resolution expressing their feeling that the account with Hynds & Co. contained a loss and the officers were instructed to charge off $6,200. This action alone, however, can not be taken as establishing the worthlessness of the debts making up this amount, however desirable the charge-off might have been for the purpose of petitioner’s financial statements. Bank directors often find it conducive to the reputation of the bank to charge off debts which are past due. The worthlessness should be shown by more convincing evidence than the order by the board of directors to charge it off. It is not shown how much cotton petitioner held as security or what its value was at the date of the charge-off. If the value of the cotton exceeded the amounts due on the particular bills of acceptance with which it was pledged, we apprehend the petitioner could have reached the surplus to satisfy the unsecured debts. The unsecured debts had resulted from deficits in the amounts realized from time to time from the sale of the security on particular bills of acceptance. The petitioner voluntarily permitted the surplus on other bills of acceptance to be withdrawn by the debtors while it still held their unsecured and overdue obligations. The petitioner’s persistence in this practice indicates to our minds a faith in the financial prospects of the debtors. The petitioner did not suddenly discover on December 31, 1920, that such faith was misplaced, for it continued to extend credit to the debtors throughout the following year in the same manner that it had been doing in 1920. The evidence does not sustain petitioner’s contention that these debts were worthless on December 31, 1920.
*549 The record does not disclose how much of the deficiency is for 1919 and how much for 1920. It is therefore necessary that the judgment for 1920 be entered under Rule 50.
Judgment will be entered for petitioner as to the year 1919, and for the respondent as to the year 1920, on 15 days’ notice, under Bule 50.